### E. H. CLARK *vs.* JUDSON A. STANTON.

#### October 25, 1877.

Assignment for Benefit of Creditors—Proceedings under Chapter 44, Gen. Laws 1876—Jurisdiction of the District Courts.—The jurisdiction over assignments for the benefit of creditors, and proceedings thereunder, granted by chapter 44, Gen. Laws 1876, is vested in the several district courts, to be exercised through the judges thereof as their organs.

Same—Same—Removal of Assignee—When Court may Act.—In exercising this jurisdiction, the court may remove an assignee for any misconduct in the administration of his trusts under the assignment, which shows such removal to be necessary in order "to ensure a faithful performance of the trusts, and a speedy close of the same by final decree of settlement and distribution."

**Same—Same—Petition under Section 10 May be Filed by Either of two Assignors.**—The petition authorized by section 10 of the statute, showing a default of the assignee in not filing his report, may be made and filed by either of two assignors, as a "person interested in the estate," within the meaning of that section.

**Same—Same—Character of the Investigation Authorized by the Statute—What Facts are a Proper Subject of Inquiry.**—The investigation authorized by the statute is a summary one, to be conducted under the control and in the discretion of the court, to the end that it may acquire the requisite information to act advisedly in the exercise of its supervisory jurisdiction over the assignment, and the proceeding thereunder; and whether the creditors become parties to it or not, any fact tending to give such information is a proper subject of inquiry.

**Same—Same—When Creditors may become Parties.**—It is not error to allow any of the creditors to become parties, and participate in such investigation, during any stage of the proceedings.

**Same—Same—Assignee cannot Make any Bargain to the Prejudice of the Estate or his Cestui que Trusts.**—The utmost good faith and integrity are required of an assignee in trust, in the administration of his trusts, and he will not be permitted to take any advantage of his position, or information as assignee, to make advantageous bargains for himself, to the prejudice of the trust estate, or any of his *cestui que trusts;* nor, if he makes any such, will be allowed to retain the benefits of them.

**Same—Same—Agreement Between Assignors and Assignee in Relation to an Unauthorized Claim.**—In adjudicating upon the claims of an assignee, in final settlement of his account with the trust estate, no private agreement between him and either of his assignors is sufficient to authorize the allowance of a claim which would be unauthorized under the assignment.

**Same—Same—Jurisdiction of the Court Ends with the Final Decree of Distribution.**—Where, in an assignment by two persons as partners, it is provided that upon a fulfillment of the trusts, the residue, if any, of the property shall be conveyed to the assignors, the jurisdiction of the court, under this statute, ends with the final decree, distributing the trust property or its proceeds, and directing a reconveyance of the residue according to the terms of the assignment; and it is not required of the court that it should determine the respective interests of the assignors in such residue, or make any apportionment thereof between them.

**Appeal—Objections to Judgment.**—An appellant can only urge such objections to a judgment appealed from as affect his interests.

On February 3, 1875, Edwin Clark and William H. Clark, copartners as E. & W. H. Clark, made a general assignment,

for the benefit of creditors, to Judson A. Stanton. Subsequently the said Edwin Clark petitioned the district court for Stearns county, under the provisions of chapter 44, of the General Laws of Minnesota for 1876, that the said Stanton be required to make and file his report as required by the aforesaid act, and that the proceedings of said assignee be investigated by said court, and that his said trust be closed, and for other relief. In accordance with an order of the court made thereon, the said assignee filed his report, June 13, 1876, and annexed thereto a certain schedule of notes and accounts against the estate, held by one J. W. Johnson, and upon which it was stated eighty per cent. of the original indebtedness had been paid. Upon the objection of Edwin Clark to the said schedule, the assignee further reported that the claims therein contained were purchased by the assignee, out of his own private funds, for sixty per cent. of the amount then due thereon, at the special instance and request of the assignors, for the purpose of preventing the said estate from being thrown into bankruptcy, and upon the express agreement with the said assignors that if he would purchase such claims for such purpose, the same should be paid in his hands, or to whom he might transfer the same, in the same manner as if they had not been assigned by the original owners thereof. W. H. Clark, one of the assignors, also filed an affidavit, in which he substantially corroborated the facts set forth in the assignee's report, and stated that it was his earnest desire that the said assignee should be still allowed to transact the business of the estate, and close up the same without any interference from the said Edwin Clark or any other person whatsoever; and that unless such assignee was permitted to close up such business, great and irreparable damage would be done to the estate and the said deponent.

Edwin Clark, and several of the creditors who had assigned the claims thus reported as held by J. W. Johnson, filed replies to the said report, in which it was practically alleged that the assignment of the claims was made at a large dis-

count, for the supposed benefit of the estate, and upon the strength of representations made by the assignee as to its insolvent condition; that the said creditors instituted the proceedings in bankruptcy solely for the purpose of getting rid of the said trustee, whom they greatly distrusted, and to thereby secure a faithful administration of the trust; that the consent of said Clark to the agreement made between the assignee and the assignors was procured by threats and intimidations, and that it was the desire of the aforesaid Clark and the said creditors that the assignee be removed, the transfer of the claims set aside, and the aforesaid agreement declared null and void.

By order of the court certain issues were thereupon framed and under a stipulation the same were submitted to be tried by the court at chambers; the testimony to be taken as prescribed in civil actions in the district courts of this state, as said court shall deem best.

Upon the trial of these issues the assignee produced in evidence, among other things, the following contract, in writing, to-wit:

"The claims and accounts of the following persons and firms against the estate of E. & W. H. Clark, having been purchased by Judson A. Stanton, the assignee of said estate, at the rate of sixty per cent. on a dollar, which claims and accounts, and each and every of them, were so purchased at the express request and solicitation of us and each of us, made by us and each of us to said Stanton prior to and about the time of such purchases, we, and each of us, hereby ratify and approve the act of said assignee in making said purchases, and each of them, and hereby agree, for a valuable consideration, that such claims and accounts, and each of them, may and shall be paid out of the proceeds of said estate to said Stanton, or the person or persons owning and holding the same, to the extent of the original amounts and face of said claims, and each of them, and interest thereon; and said Stanton, or such person holding such claim or claims, may

and shall share and be paid *pro rata* with all the other credit-
ors of said estate, and be entitled to receive dividends upon
the original amount of said claims to the same extent, and be
entitled to all and the same benefits that the original assignor
or assignors of such claim or claims would have been entitled
to receive, had he or they not made any assignment thereof.
[Here follows a list of the persons who had assigned their
claims and accounts, as stated in the contract.]

"EDWIN CLARK.

"WILLIAM H. CLARK."

Upon the other hand, the court admitted in evidence, under
objection and exception, and as part of the testimony for the
plaintiff, Edwin Clark, certain depositions of the aforesaid
creditors tending to impeach the validity of the transfer of
their claims to the assignee, and to establish the facts set out
in their replies to the report.   The court also permitted sev-
eral of the said creditors to file a petition after a portion of
the evidence had been received, in which they asked, upon
the facts and testimony made to appear in the said proceed-
ing, in respect to the conduct of said estate by said assignee,
that the amount of their claims might be paid from the funds
of the estate, the assignee removed, and such other relief
granted as the court might consider necessary for the pro-
tection of their rights.

Upon the issues submitted, the court found, among other
things, that the estate had never been insolvent except in so
far as the mere act of making said assignment might con-
stitute such insolvency; that on February 15, 1876, the said
assignee had sufficient cash funds to pay all the outstanding
indebtedness of the estate, with costs and expenses; that
four dividends, of twenty per cent. each, had been declared
in favor of the creditors of the estate; that the assignee pur-
chased some of the claims against the estate at a large dis-
count, and through unfair means, using both his own funds
and those of the estate for that purpose; that nothing had

been paid upon said claims since their purchase, the assignee having retained all subsequent dividends declared upon the same, although payment of the said dividends had been duly indorsed on the said claims; that said claims were afterwards assigned to J. W. Johnson, and their payment in full guaranteed by the said assignee; that said assignee had not acted in good faith in the execution of his trust, or for the best interests of the estate, or the creditors thereof; that Edwin Clark requested the assignee to purchase the said claims, and that part of the same were so purchased to prevent proceedings in bankruptcy; that said proceedings were commenced by a part of the holders of the said claims, because of their dissatisfaction with the said assignee and his administration of the estate; that said assignee gave the said creditors just and reasonable grounds to suppose that unless they sold their claims at a discount, they would otherwise be a long time obtaining a settlement of the same; that none of the said claims were purchased for the benefit of the estate; that the agreement between the assignors and assignee in relation to the purchase of the claims was not freely and voluntarily entered into by said Edwin Clark, but was signed by him from a just ground of fear that the said assignee would otherwise injure the said estate.

Upon the evidence introduced into the case the court further found, among other things, that the amount of the claims purchased by the assignee was $10,163.28, and that he paid therefor $6,160.79; that in April, 1875, he made a general offer of sixty per cent. to all the creditors for the claims against the estate, which offer was refused by a large number, and that the claims of such as refused were subsequently paid in full; that all the claims purchased by the assignee were so purchased without the consent of any of the other creditors, and that some creditors were induced to sell their claims at sixty per cent., by means of representations that others had sold at the same figure; that said assignee failed to inform any of the creditors of the true condition of the

estate; that said estate had at no time been in a condition when it would not, by careful management, have paid all the creditors in full, including costs and commissions, and left a large surplus for the assignors; that the agreement between the assignors and the assignee was unfair and unconsciona- ble, and that the assignee took advantage of his position to obtain a hard bargain with the said assignors, and each of them; that many of the claims bought by the assignee were purchased solely for his private advantage, and that the same were transferred to S. W. Johnson in bad faith; and that on February 15, 1876, the said assignee had funds and property sufficient to have paid all indebtedness of the said estate, together with all costs and commissions.

As conclusions of law, the court found, among other things, that the agreement between the assignors and the assignee was null and void; that the benefit of the claims purchased should enure to the estate, less the money advanced by the assignee, with interest; that the assignee was not entitled to compensation for services after February 15, 1876; and that he should be removed and required to turn over the said estate to the assignors, and pay all the proper costs and disburse- ments of this proceeding. Thereupon a copy of the pro- posed judgment in this proceeding was served upon the defendant, and the protest of William H. Clark, against the entry thereof, was served upon the plaintiff, and said judg- ment having been thereafter duly settled, the same was entered by order of the court. The defendant thereupon appealed from the said judgment.

*D. B. Searle* and *H. L. Gordon,* for appellant.

Chapter 44, Gen. Laws of 1876, does not confer upon the judge of the district court the power to try issues of fact, or to remove an assignee. Under this act the judge of the district court is only authorized to investigate the proceedings of the assignee, and order a final settlement of the estate. *Drain* v. *Michel,* 8 Iowa, 438. If, then, the court had no juris- diction to try the issues in this case, it is clear that it was not

aided by the stipulation of the parties. And in any event, the court had no power to try and determine the validity of the purchase of the claims, and of the contract between the assignors and assignee, when such issues were not submitted by the stipulation. Such questions could only be tried by a court of equity, in a suit duly brought to trial, and conducted according to some known rules of law or equity.

If the court had jurisdiction to try these issues, then they could only have been tried between the assignee and Edwin Clark. William H. Clark was not a party in behalf of the estate in any way, and can only be considered, if at all, as a party adverse to the petitioner, Edwin Clark. The contract between the assignors and the assignee was joint and several in its terms, and even if it was void for duress as to Edwin Clark, it did not follow that it was void, for that reason, as to William H. Clark. *Pierce* v. *McIntire*, 2 Dane Ab. 224; *Robinson* v. *Gould*, 11 Cush. 55; *Wayne* v. *Land*, 1 Freeman, 351; *Webster* v. *Reed*, Morris, (Iowa,) 479. The contract was only voidable, (*Bostwick* v. *Atkins*, 3 N. Y. 60; *Graves* v. *Waterman*, 4 Hun, N. Y. 687; *Boerum* v. *Schenck*, 41 N. Y. 182; *Litchfield* v. *Cudworth*, 15 Pick. 31; *Jennison* v. *Hapgood*, 7 Pick. 1, 7; *Arnold* v. *Brown*, 24 Pick. 97,) and, therefore, should stand, unless disaffirmed. *Jackson* v. *Van Dalfson*, 5 John. 43; *Jackson* v. *Walsh*, 14 John. 407; *Welson* v. *Troup*, 2 Cow. 196; Kerr on Frauds, 156, 303; Perry on Trusts, § 849. William H. Clark expressly affirms the contract, and it is, therefore, certainly binding as to him. The contract is not necessarily void against both assignors because void as to one. It is also manifest that the purchase of the claims, to prevent proceedings in bankruptcy, was a sufficient consideration to support the contract. Neither can it be said that the contract was unconscionable as to William H. Clark, when he himself makes no such complaint, but on the contrary expressly asks that it be sustained. Neither is the judgment valid as to William H. Clark, because he was not a party to the proceeding adverse to the assignee, and he would not,

therefore, be bound by this judgment in a subsequent controversy. Freem. on Judg. §§ 158, 159. It is claimed, therefore, that if the judgment is not reversed that it should be so far modified as to conform with the law and the facts of this case.

*Chas. D. Kerr* and *L. W. Collins*, for respondent.

CORNELL, J. It is contended by appellant that the jurisdiction over assignments for the benefit of creditors, and proceedings thereunder, which is given by chapter 44, Gen. Laws 1876, is vested solely in the several judges of the district courts of the state, and not in the courts themselves as such; that in using the expression, "judge of the district court," in designating by whom the powers conferred are to be exercised, the statute recognizes a distinction between the judge and the court, and indicates the former and not the latter as the sole depositary of such powers. Hence, it is claimed that the district court can take no cognizance of any proceedings instituted under it; and inasmuch as the district judge, in exercising the authority which it confers, acts solely as an officer, deriving all his powers from its provisions, he can only exercise such as are especially conferred.

The statute is a remedial one, to be liberally construed with reference to its declared purpose, which is "to protect the creditors of assignors, and to regulate the duties of assignees." By it every assignment or conveyance of the character indicated, together with the statement specified in section 2 of the act, is required to be filed with the clerk of the district court of the county wherein the debtor making it resides. The bond which the assignee is required to execute before entering upon his duties must be approved by the judge of the district court and filed with its clerk, and the court is authorized to grant leave to any creditor to prosecute the bond on a breach of any of its conditions, and to apply the proceeds in satisfaction of the debts. Section 8 distinctly recognizes the fact that such filing of the assignment, bond and inventory, with the clerk is a filing in court. The processes which are

authorized to be used in aid of the powers conferred, to-wit, a citation, attachment and summons, are such as appropriately belong to a court to enable it to subject parties to its jurisdiction, and to enforce a performance of its judgments or orders. The general power of supervision and control given over the proceedings, together with the authority to fully investigate the same, and to make any and all orders that may be proper and necessary to insure a faithful performance of the trusts created by the assignment, and a speedy close of the same by a final decree of distribution in accordance with the purposes of the assignment, necessarily involves the exercise of judicial power of such a nature as only a court having jurisdiction in equity as well as law can enjoy and exercise. Under our constitution district courts are the only ones competent to take and exercise, originally, a jurisdiction of this character. To give effect, then, to the provisions of this statute in respect to all powers of this character, which it assumes, in terms, to confer upon the "judge of the district court," it must be presumed they were intended to be vested in the court itself, to be exercised by the judge as the authorized officer, by and through whom its judicial functions are to be administered. That the proceedings herein, therefore, were commenced and prosecuted in the district court furnishes no ground for alleging error.

The respondent petitioner was one of the parties who made the assignment. He was "a person interested in the estate," within the meaning of section 10 of the statute, and a proper party to file the petition showing a default on the part of the assignee in not filing his report according to the provisions of that section. The petition showed such default, and was sufficient authority for the court to issue its citation, to show cause, to the assignee, and for the subsequent proceedings which were had, whereby his report was caused to be filed and the investigation was instituted.

The object of the investigation, as allowed by the statute, was to obtain the requisite information to enable the court to

v.24m—16

act advisedly in making such orders as might be "necessary to insure a faithful performance of the trusts, and a speedy close of the same by final settlement and distribution of the estate." Its conduct was largely in the discretion of the court, as no particular mode of procedure is prescribed. Its scope was only limited to an inquiry into such facts as were pertinent and material to the purpose of the investigation, which was to inform the conscience of the court, so that its supervisory jurisdiction over the proceedings under the assignment might be properly and judiciously exercised. Within this limit it was in the discretion of the court to allow the examination to be carried to any extent, irrespective of the specific charges contained in the petition, or the wishes of either the assignors or the creditors. It was immaterial, therefore, whether the co-assignor, Wm. H. Clark, or any of the creditors, became parties to the investigation or not, as the legitimate scope of the examination was not thereby necessarily affected. Hence the ruling of the court in allowing some of the creditors to file replies to the report of the assignee in no way prejudiced him, as it opened no new field of inquiry, and did not in the least change the character of the investigation, which it was the duty of the court to make, irrespective of such replies. It was within its jurisdiction, of its own motion, the appellant being properly before it, to make full inquiry into his conduct, dealings and transactions as assignee, in order to ascertain the manner in which the trusts were being performed, and whether he was a suitable person to be longer continued in their administration. Evidence tending to show bad faith on the part of the assignee towards his *cestui que trusts*; that he purchased of them demands against the trust estate at a large discount, for his own benefit; that, in making such purchases, he concealed from them the actual value and condition of the trust property, and misrepresented the purpose and effect of the assignments which he procured, was clearly competent, upon the question of his integrity and fitness as assignee. None of the evidence

received in this case seems to us open to any valid objection, as being beyond the legitimate scope of the examination.

The permission which was given to the creditors to file replies to the report of the assignee, and to take part in the proceedings, was, in our judgment, a proper exercise of discretion, under the circumstances. The allegations therein contained, if true, tended strongly to impeach the honesty and integrity of appellant as assignee, and the validity of the assignments which he obtained from the creditors upon the settlement and transfer of their claims against the estate. Under these circumstances it was proper to give them a hearing, for if the facts therein alleged· were proved, and the invalidity of the settlements and transfers established as to any of the creditors, such creditors would have a right to be consulted in the future management and disposition of the trust estate, as still having an interest therein. The fact that appellant had transferred the demands which he had so purchased did not preclude the court, in the adjustment of his claims and accounts as assignee, from examining the character of such purchases and assignments, and adjudicating upon their validity as between him, as assignee, and the estate.

That the assigned property was ample, under proper management, to fully satisfy and discharge all indebtedness against it, together with the expenses of executing the trusts, and leave a surplus for the assignors; that the administration of such trusts was being unnecessarily and unreasonably delayed; that the assignee had misused his position and knowledge as trustee to speculate in claims against the estate for his own benefit, and had improperly employed a portion of the trust funds for that purpose; that in purchasing such claims he grossly violated his duties and obligations as trustee, by concealing from the creditors a correct knowledge of the value and condition of the trust estate, and thereby and by misrepresentations induced a belief in its insolvency, and secured to himself advantageous bargains and transfers, under the false pretence and impression that the estate alone was to receive

the benefit of the transactions, instead of himself: are facts fully established by the evidence and findings, and constituted sufficient grounds for his removal, if the court possessed the power, and for a full settlement and adjustment of his accounts and dealings with the estate as assignee. That this power of removal for adequate cause is vested in the district court, as a court of equity, and may be exercised in a proper action brought for that purpose, is undoubted.. *Goncelier* v. *Foret*, 4 Minn. 1, (13 ;) Gen. St. c. 43, §§ 8, 26, 27. No good reason is perceived why it may not also be exercised in proceedings under the statute in question, whenever it becomes necessary, in order "to insure a faithful performance of the trust, and a speedy close of the same by final decree of settlement and distribution."

During the administration of his trust the assignee bought claims against his assignors amounting to $10,163.28, for the sum of $6,160.24, and took assignments thereof from the creditors, in his own name. In making these purchases he advanced of his own funds $2,542, the balance being taken out of moneys belonging to the trust estate. In the settlement of his accounts as assignee the court credited him with the amount of his advances and interest during the time the estate had the benefit of them, but disallowed his claim to be treated as a creditor of the estate in respect to such demands, and to be paid their full par value and interest.

The utmost honesty, integrity, and good faith are required of an assignee in trust in all his dealings with the trust property, and his *cestui que trusts*. He is held to a strict accountability for any act of negligence or abuse committed in the administration of his trusts, and for any misappropriation of trust funds to purposes unauthorized by the instrument of assignment. The fiduciary character of his position precludes him from taking any advantage of his influence as assignee, or of any information acquired while acting in that capacity for purposes of personal gain or profit. Every agreement having such an object, made with his assignors or

with any of their creditors, especially if not communicated to and approved by all, is looked upon by the courts with great suspicion and distrust, and if tainted with the slightest evidence of fraud, concealment, or misconduct on the part of the assignee in its procurement, will be set aside as inequitable and unjust, and he will not be permitted to reap any personal advantage therefrom. These are general principles, too well settled to require the citation of authorities. Perry on Trusts, §§ 209, 427, 430.

Upon the findings and the evidence herein it is evident that the bankruptcy proceedings, which were threatened and instituted by a portion of the creditors, were caused by the misconduct and culpable delay of the assignee in the execution of his trusts, and the apprehensions of loss to the trust estate thereby reasonably excited. If, therefore, it was necessary to purchase the claims of these creditors, to stop these proceedings, it was owing to the fault of the assignee. As to all the purchases made and discounts obtained, the creditors acted under like apprehension of loss,' occasioned by the misconduct of the assignee in studiously concealing from them the real condition and value of the trust property, procrastinating a settlement of the estate, and in most, if not all the cases, inducing them to believe that all compromises effected would enure solely to the benefit of the estate. Neither did he inform them of the existence of any arrangement or understanding between him and either of the assignors, whereby he was to derive only personal benefit to himself from such purchases. Under these circumstances the court was clearly right in disallowing his claim, especially in view of the written protests against it on the part of the defrauded creditors. Though both assignors had joined in asking its allowance, it ought not to have affected the result.

It was unnecessary to consider the validity, as between themselves, of the alleged written agreement between the assignee and his assignors, in order rightly to adjudicate upon the claims and accounts of the former under the assignment, for

such adjudication depended wholly upon the terms of the assignment—which neither could modify—the doings of the assignee under it, and those equitable principles which are applicable to such cases. The proper adjudication of this question did not require the court to determine how much and what portion, if any, of the trust estate would remain after the fulfillment of the trusts to be reconveyed to the assignors, and to ascertain their respective interests therein, and make apportionment accordingly. Its entire jurisdiction in these proceedings was to see that the trusts created by the assignment were fulfilled by satisfying the expenses incurred thereunder, the debts fastened upon the trust estate, and restoring the residue of the property, if any, to the authors of the trusts.

The appellant assignee is the only party bringing this appeal. He can only be heard to urge such objections to the judgment as affect his interests alone. The only respect in which he is affected by it is in his removal as assignee, and in the adjustment of his accounts and claims as such assignee against the estate. Whether the creditors or assignors are properly protected by it or not, in their respective interests under the assignment, is a matter of no concern to him, and cannot be considered on this appeal.

Judgment affirmed.